[Civ. No. 3235. Fourth Dist. Sept. 27, 1943.]

C. O. HEWINS et al., Respondents, v. EDWARD H. WALBECK et al., Appellants.

Charleville & Weddell, W. H. Weddell and Harry H. Parsons for Appellants.

Swing & Swing and Ralph E. Swing for Respondents.

GRIFFIN, Acting P. J.—On November 10, 1942, plaintiffs and respondents filed this action in forcible entry and detainer against defendants and appellants alleging that for more than five years they had been in peaceable possession of a certain mine, mining claim, and furnished dwelling house in San Bernardino County; that about August 25, 1941, during the absence of plaintiffs, defendants entered upon said property, broke open the doors and windows, entered, took, and retained possession thereof to the damage of plaintiffs in the sum of $2,000, and that the reasonable rental value of the property was $150 per month. The prayer is for restitution and damages.

On November 10, 1942, summons was issued directed to the defendants to appear and answer within three days. It was duly served upon defendants in San Bernardino County on the same day. They failed to appear within the time therein prescribed. Their default was entered on November 14, 1942. Judgment against defendants was ordered by the court and entered on November 16, 1942, which fixed the actual damages at $1,600 and determined that plaintiffs were entitled to treble damages totaling $4,800. It awarded immediate possession of the property to plaintiffs. On January 5, 1943, defendants filed a notice of motion that on January 18, 1943, they would move the court to vacate and set aside the default judgment as entered on the ground of mistake and excusable neglect. On motion of counsel for defendants the

matter was continued to January 23, 1943. Laura Walbeck filed her affidavit in support of the motion. It alleged that on October 27, 1942, she was incarcerated in the San Bernardino County Jail (in connection with a charge of grand theft of the furniture in the house involved). (See *People* v. *Walbeck,* 59 Cal.App.2d 277 [138 P.2d 405]); that she had been ill and under the care of a physician prior to that time; that after her incarceration her asthmatic condition became worse; that on November 9, 1942, she contracted a severe cold and carried a high fever; that on November 10, 1942, while in such condition, she was handed some papers in the jail by a man; that due to the fact that she did not have her glasses with her she was unable to read; that one of the inmates looked at the papers for her and she advised her it was ''some sort of a law suit''; that she arranged to and did forward the papers to her minor daughter for her attention; that she did not know that the time to answer was only three days; that she advised her daughter to obtain an attorney; that the next thing she knew a judgment by default had been obtained against her.

Alice Burns, aged 17, minor daughter of defendant Laura B. Walbeck, filed her affidavit and alleged that on November 11, 1942, her mother sent the copy of the summons and complaint to her with the notation to obtain an attorney to handle the case; that on November 12 she went to an attorney who had previously represented her mother but that he was not in; that three or four days later she called again and showed him the papers and the attorney told her that it was too late to file an answer as the attorney for the plaintiff had taken a default judgment.

An affidavit of the physician was filed alleging that the physician called upon Mrs. Walbeck on November 12, 1942, while she was in the jail and found her ''suffering from a cold and asthma.'' A physician from the county hospital made an affidavit that defendant Edward H. Walbeck was, on November 10, 1942, under treatment in the San Bernardino County Hospital suffering from a cancer; that several operations had been performed and that on December 28, 1942, the date of the affidavit, it was a ''hopeless case.''

The affidavit of defendant E. H. Walbeck shows that on November 10, 1942, he obtained permission from the county hospital authorities to appear at the courthouse; that he immediately returned to the hospital and that on November 11, 1942, while he was sick and ill, he was served with sum-

mons and complaint and was unable to appreciate the effect of such service and was unable to do anything until November 24, 1942, when he called at his attorney's office and explained the situation to him. Affidavits of merit were filed by each defendant alleging that a full and fair statement of all the facts was made to their attorney and that defendants were advised by their counsel that each had a good and valid defense to the cause of action set forth in the complaint.

In opposition to these affidavits plaintiff C. O. Hewins filed his affidavit alleging generally the nature of the cause of action; that defendants at all times knew that the dwelling house was constructed and owned by plaintiffs and was occupied and used by them as their home; that prior to the month of August, 1941, plaintiffs were required to go temporarily to Arizona for the purpose of carrying out a contract, and temporarily left their home, but before so doing caused it and all buildings thereon to be securely locked and the gate to the premises also locked; that during their absence, defendants, without the knowledge of the plaintiffs and without any right, forcibly entered the premises and took possession of the dwelling house and buildings on the mining claim and forcibly obtained possession, and while in possession stole all of plaintiffs' furniture and furnishings, sold and disposed of them without any right whatever, and forced plaintiffs to take action to replevin the same; that plaintiffs secured a portion of such furniture as a result of the replevin action, but suffered the loss of more than $4,000 in furniture and equipment and mining machinery taken and removed by defendants from the premises during the plaintiffs' absence; that defendant Laura B. Walbeck was arrested for the stealing and removal of the property and was convicted of such offense and is now under sentence in the state prison for women; that plaintiffs served written notice upon defendants demanding the possession of the buildings and the premises but they refused to surrender the same and that Laura B. Walbeck threatened to inflict bodily harm and kill the affiant if he attempted to enter the premises; that soon thereafter, on May 4, 1942, plaintiffs brought an action in the justice's court to regain possession of the premises; that defendants appeared in the action by their attorney, Mr. Hilliard; that thereafter Mr. Hilliard withdrew from the action and an answer was filed by another attorney by the name of Miller, which alleged that the title to the real property was involved and asked that the matter be transferred to the superior court

for trial; and that the action was transferred accordingly and placed upon the calendar of the superior court for trial on July 7, 1942. Prior thereto, Mr. Miller, at his own request, was relieved of being attorney for the defendants and Mr. Parsons was substituted in place of Mr. Miller; that Mr. Parsons gave notice that he was unable to try the case on the day on which it was set and said action was again set for September 29, 1942; that on that date Mr. Parsons failed to appear for trial and in lieu of appearing filed an affidavit that he was sick and unable to participate, at which time another attorney, Mr. Larson, appeared for the defendants and on his motion the action was continued to October 16, 1942. On the 14th day of October, 1942, another attorney, Mr. Holcomb, and also attorney Reid, were substituted as attorneys for defendants in lieu of Mr. Parsons, and when the action came on for trial the cause was continued to November 9, 1942, on the ground that Laura B. Walbeck was ill; on that date, instead of trying the action, the attorneys for the defendants moved to remand the action to the justice's court on the ground that the superior court had no jurisdiction; that the motion was granted and the case was remanded accordingly; that prior to the making of the motion, plaintiffs had caused the complaint in that action to be amended insofar as damages were concerned, to show that the rental value of the property and damages suffered exceeded the jurisdiction of the justice's court; that thereafter plaintiffs caused the action to be dismissed in the justice's court and immediately filed the instant action in the superior court predicated on the same acts, for possession and damages sustained. The affidavit further alleges that from May 5, 1942, to and including November 9, 1942, the defendants remained in possession of the premises and deprived plaintiffs thereof and inflicted damages on them, and it was during such time that the defendant stole the furniture belonging to plaintiffs from the premises; that the instant action was commenced on November 10, 1942, in the superior court predicated upon the same facts; that summons was duly issued and regularly served, and that defendants failed and neglected to appear and that thereafter, on November 23, 1942, judgment was entered as above mentioned (record shows entry of judgment on November 16, 1942); that execution was issued upon the judgment and certain real property of the defendants was levied upon and advertised for sale; that notice of the sale was regularly given by publication and posting in the manner and form

provided by law and the property was sold at public auction on December 21, 1942; that the sum of $3,000 was bid and a certificate of sale was issued to plaintiffs as purchasers thereof; that such certificate of sale was duly and regularly recorded. It is then alleged, upon information and belief, that the defendants were properly notified of their rights and had notice of the entry of the judgment and of the issuance of the execution and of the fact that the property was advertised to be sold under the execution prior to the 2nd day of December, 1942; that notice of motion to set aside the judgment was not given until January 5, 1943; that on January 18, 1943, the defendants executed a deed conveying away all of the aforesaid real property so levied upon by plaintiffs and recorded the same, and at the same time they conveyed away all other property of any kind which they then possessed, so that in the event the judgment was set aside plaintiffs would lose their lien upon the property and there would be nothing from which they could satisfy their claim against the defendants for their damages. It then alleged that there was no defense to the action on the merits thereof; that affiant was present and heard the testimony of the defendants in the criminal case that was presented at the time of the taking of the deposition of the defendant Edward H. Walbeck, at which time the defendants admitted that they had taken possession of the plaintiffs' dwelling house and property during their absence, from which testimony it conclusively appears that there is no defense to this action on the merits; that if the judgment should be set aside and the sale of the property vacated, plaintiffs would lose their lien upon the property and never be able to recover anything from the defendants; that to set aside the judgment would result in the plaintiffs suffering great loss and injury in that they would lose the use and possession of their dwelling house and property without any possibility of recovering any damages therefor and they would suffer damages because of the action of the defendants in taking and disposing of the furniture while it was unlawfully in their possession.

This affidavit is corroborated by the affidavit of the attorney for the plaintiffs in which he alleges that from May 4, 1942, until November 9, 1942, he took every ethical action which could be taken to have the case brought to trial upon its merits; that in the action in the justice's court the defendants appeared and filed an answer quite similar to the answer sought to be filed in this action; that at the time the action

was remanded to the justice's court, Attorney Reid appeared for defendants and after that action had been so remanded he advised Mr. Reid that he was going to dismiss the justice's court action and bring a new action predicated upon the same facts, with additional damages, in the superior court; that said Reid informed him that he would no longer represent the defendants and did not intend to appear in the action in the superior court on behalf of them; that prior thereto the defendants had changed attorneys on numerous occasions and affiant had no way of ascertaining who might perhaps represent them in the new action in the superior court. He then alleged that the defendants were not only served with a summons and complaint in the present action and had notice of the purposes of the action, but likewise had notice that judgment was entered in this action against them at the time it was entered, and had notice and knowledge that execution was issued thereon and that the property of the defendants had been levied upon and that the same had been advertised for sale and would be sold; that defendants took no action or gave no notice that they wished to have the action tried upon its merits or that they were dissatisfied with the judgment which had been rendered in the action; that defendants have since deeded away all of their property, real and personal, and have become judgment proof, and that if the judgment and default are set aside plaintiffs would not be able to realize upon a judgment which might be later obtained in this action; and that there is no meritorious defense to this action.

Upon these affidavits and the evidence presented to the trial court, it denied the motion to set aside the judgment and default. The only question here presented on this appeal is whether or not that court abused its discretion in so doing.

It is well settled in this state that the granting or refusing of relief under the provisions of section 473 of the Code of Civil Procedure is a matter which rests in the discretion of the court to which the application is presented; that the court's discretion in such matter is broad, and that an abuse thereof must clearly be made to appear to warrant a reviewing court in disturbing the trial court's action. It is obvious that a party who seeks relief under that section must make a showing that due to some mistake, either of fact or of law, of himself or of his counsel, or through some in-

advertence, surprise or neglect which may properly be considered excusable, the judgment or order from which he seeks relief should be reversed. In other words, a burden is imposed upon the party seeking relief to show why he is entitled to it, and the assumption of this burden necessarily requires the production of evidence. (*Bruskey* v. *Bruskey*, 4 Cal.App. 2d 472 [41 P.2d 203] ; *Williams* v. *Reed*, 43 Cal.App. 425 [185 P. 515].) Section 473 of the Code of Civil Procedure is a remedial provision and is to be liberally construed so as to dispose of cases upon their substantial merits and to give to the party claiming in good faith to have a subsisting cause of action or a substantial defense thereto an opportunity to present his case. (*Stub* v. *Harrison*, 35 Cal.App.2d 685 [96 P.2d 979].)

In considering this general rule, we are likewise familiar with the cases relied on by appellants to the effect that it is the policy of the law to favor, wherever possible, a hearing on the merits, and that appellate courts are much more disposed to affirm an order where the result is to compel a trial upon the merits than they are where a judgment is allowed to stand and it appears that a substantial defense could be made, such as *Porter* v. *Bryson*, 35 Cal.App. 688 [170 P. 1068] ; *O'Brien* v. *Leach*, 139 Cal. 220 [72 P. 1004, 96 Am.St. Rep. 105] ; and *Stub* v. *Harrison, supra.*

 It now affirmatively appears, and has been established, that the defendant Mrs. Walbeck has been convicted of grand theft of the furniture above mentioned. It has been fairly well established that the main defense in the criminal action, i. e., that legal title to that property was in her at the time of the alleged taking, had little merit. Defendants' claim of title to the real property in the present action is more or less based upon the same theory. It is clear that plaintiffs have been endeavoring, ever since May, 1942, to dispossess defendants from said property. Defendants surely have employed a sufficient number of lawyers between that date and the date of service of summons in the present action to become fairly familiar with the necessary steps that should be taken to protect their interests by seeking advice of counsel. All actions taken by defendants in the proceedings since May, 1942, indicate an effort for delay rather than an effort to have their claimed rights adjudicated. While this showing, in and of itself, may not be sufficient to offset the reasons advanced by defendants for their failure to act immediately in seeking relief under section 473 of the Code of Civil Pro-

cedure, nevertheless, the relief sought under that section is in its nature an equitable proceeding addressed to the sound discretion of the trial court, in which it must not only appear that defendants have a meritorious defense to the action, that they acted within a reasonable time after such judgment was taken, that the facts related constitute excusable neglect, surprise, inadvertence or mistake, but it must also appear that the defendants seek such relief in good faith, that no injustice will result from a trial on its merits, and that plaintiffs will not suffer any prejudice thereby.

Had title to defendants' real property remained subject to their control rather than being disposed of before the hearing on the motion, the trial court might well, as a condition for granting the motion, have ordered defendants to subject their property to the satisfaction of any judgment plaintiff might later obtain. (*Douglass* v. *Todd,* 96 Cal. 655, 660 [31 P. 623, 31 Am.St.Rep. 247] ; *Berri* v. *Rogero,* 168 Cal. 736 [145 P. 95].) In this action it appears, and the trial court might well have determined, that defendants were not entitled to the relief sought because plaintiffs would suffer prejudice and that an injustice would result because of the fact that after the judgment was obtained and a levy had been made on their property, they immediately deeded all of their property to a third party for the avowed purpose of defeating defendants' lien thereon, or of an opportunity to realize upon any judgment that might thereafter be obtained in the action by reason of their insolvency, should the default and judgment heretofore entered be set aside. Under the circumstances, we do not feel disposed to interfere with the conclusions of the trial court.

Order affirmed.

Marks, J., concurred.