[Civ. No. 17850. Fourth Dist., Div. Two. Feb. 23, 1978.]

TOM THUMB GLOVE COMPANY, INC., Plaintiff and Respondent, v. KWANG-WEI HAN et al., Defendants and Appellants.

**COUNSEL**

Albert E. Nasser for Defendants and Appellants.

Musick, Peeler & Garrett, Bruce E. Clark and James L. Seal for Plaintiff and Respondent.

**OPINION**

**MORRIS, J.**—Defendants, Kwang-Wei Han and Han & Company (hereinafter referred to as Han), appeal from a judgment on a sister state judgment, entered pursuant to Code of Civil Procedure section 1710.10 et seq. after defendants' motion to vacate had been denied.

On May 13, 1976, plaintiff, Tom Thumb Glove Company, Inc., obtained a judgment against Han in a North Carolina court. In its judgment, the North Carolina court found that plaintiff had sold and delivered gloves to Han during 1973 and 1974 and that, according to invoices presented at trial, the total price was $57,728.10, none of which had been paid despite numerous demands upon Han for payment.

On September 16, 1976, plaintiff applied for entry of a California judgment based on the North Carolina judgment and, pursuant to Code of Civil Procedure section 1710.25, judgment was entered. Han, having been duly served with notice of the entry of judgment, filed a motion to vacate the judgment pursuant to Code of Civil Procedure section 1710.40. The motion was heard on February 9, 1977, and again on March 10, 1977, when it was denied.

Han's first contention on appeal, and his basic point below, is that the North Carolina judgment was obtained by extrinsic fraud and, therefore, is not entitled to full faith and credit in California. The judgment recites that the complaint was filed on February 6, 1975, that on July 15, 1975, after denying Han's motion to dismiss for lack of personal jurisdiction, Han was given 30 days to file an answer, that the action was calendared for trial and a copy of the calendar was mailed to Han and his counsel, and finally that, although no answer was filed and Han did not appear when the case was called for trial, plaintiff elected to proceed with a trial and present evidence. To explain this and support his contention that the judgment was obtained by extrinsic fraud, Han presented two declarations, one by himself and one by his attorney, Albert Nasser. Nasser stated that he had prepared an answer to the complaint, but that in telephone conversations with plaintiff's attorney, John Hall, in which he explained that Han was in poor financial condition and that Han had a defense to the suit and that Han desired an ultimate and amicable resolution of the dispute, Hall stated that no default would be taken, that the answer need not be filed, and that when Han's financial condition improved the matter could be resolved without further litigation. Nasser also stated that after the California judgment was entered he called Hall, at Han's request, for an explanation and was told that the North Carolina judgment was obtained because he (Nasser) had said Han would send some money but none had been sent. He stated further that he was astonished by this statement and reminded Hall of the earlier conversations and that he had told Hall that Han was in no financial condition to send any money as was indicated in a letter Nasser had sent to Hall on December 10, 1975. The letter,[1] which was attached to the declaration and incorporated therein, expressed thanks for Hall's courtesy "in holding this matter open in consideration of" Han's economic difficulties, willingness to keep Hall informed, and ultimate payment of the account. Han's declaration basically corroborates Nasser's statements

---

[1]Actually there are two letters, but the gist of each is as described above. At the March 10, 1977, hearing Nasser indicated he was uncertain whether he had sent both or only one of the letters.

and adds that he was very surprised when served with the California judgment.

John Hall's declaration, filed in opposition to the motion to vacate, states, inter alia, that after the court gave Han 30 days to answer and Han did not file an answer, he nevertheless did not take or seek to obtain a default judgment, that under North Carolina law a case may be set for trial even though no answer has been filed, but that on at least one occasion he requested a continuance of the trial in order to permit Han to make some payment on the obligation involved in the action. Hall stated further that no payment was forthcoming and the action was again set for trial, at which time he declined the court's offer to enter a default judgment against Han, elected to have the case heard on the merits, and introduced documentary evidence and oral testimony.

██ Initially, we cannot help but notice that Hall's declaration does not squarely controvert the statements in Nasser's declaration, but rather seems to sidestep the entire matter of the Nasser-Hall conversations. Nevertheless, the burden is on the party seeking relief to show by a preponderance of the evidence why he is entitled to it. (E.g., *Robinson* v. *Robinson* (1962) 208 Cal.App.2d 213, 221 [25 Cal.Rptr. 143]; *Hewins* v. *Walbeck* (1943) 60 Cal.App.2d 603, 609-610 [141 P.2d 241]; see also *Gardner* v. *Trevaskis* (1958) 158 Cal.App.2d 410, 413-414 [322 P.2d 545].) ██ Moreover, it is for the trial court to evaluate the credibility of witnesses (*Estate of Rouse* (1957) 149 Cal.App.2d 674, 679 [309 P.2d 34]) and the judge may "disregard the testimony of any witness, or the effect of any prima facie showing based thereon, when he is satisfied that the witness is not telling the truth or his testimony is inherently improbable due to its inaccuracy, due to uncertainty, lapse of time, or interest or bias of the witness. All of these things may be properly considered in determining the weight to be given the testimony of a witness although there be no adverse testimony adduced. . . . A witness may be contradicted by the facts he states as completely as by direct adverse testimony, and there may be so many omissions in his account of particular transactions or of his own conduct as to discredit his whole story." (*La Jolla Casa deManana* v. *Hopkins* (1950) 98 Cal.App.2d 339, 345-346 [219 P.2d 871].) ██ "An appellate court cannot control a finding or conclusion denying credence, unless it appears that there are no matters or circumstances which at all impair the accuracy of the testimony . . . ." (*Id.*, at p. 345.)

Reexamining the declarations presented by Han, we find that they too are somewhat cryptic and unenlightening, enough so that the trial court could reasonably conclude that Han had failed to shoulder the burden of proof placed upon him. The declarations fail unequivocally to deny, or otherwise explain, the recital in the North Carolina judgment that notice of the trial date was mailed to Han and his counsel. They fail expressly to state that there was an *agreement* between Hall and Nasser regarding holding the matter open or, if there was such an agreement, to specify what its terms were, particularly whether holding the matter open was conditioned on anything, such as partial payment, whether there was any time frame contemplated, and whether any arrangements had been made to give notice to Han before proceeding further with the action. The declarations also fail to give any hint as to what the defense on the merits of the action may be,[2] and they are disquietingly elusive in other respects, such as no dates, not even approximate, are given for the telephone conversations and, when discussing the answer, Nasser stated only that he prepared it to be timely filed, not that it *was timely prepared* and he was about to file it before the deadline when he called Hall. The trial court could reasonably conclude, in light of the December 10, 1975, letter and the general practice of attorneys to send such confirming letters within a reasonably prompt time, that the conversations occurred after the deadline had passed and Han had, thus, already defaulted, which would warrant the court's denial of relief. (See *Yarbrough* v. *Yarbrough* (1956) 144 Cal.App.2d 610, 616 [301 P.2d 426].) The court could also reasonably conclude, in light of the general practice of attorneys when confirming an agreement by letter to do so promptly and to specify at least the major terms of the agreement, that the December 10, 1975, letter indicates that in fact no agreement was made. The same conclusion could be reached by viewing Nasser's interpretation of the telephone conversations as simply unbelievably favorable to Han, involving as it does all give and no take by plaintiff, and accepting as more probable the version Hall later gave to Nasser when explaining why the judgment was obtained, i.e., that since no payment was forthcoming as expected, plaintiff proceeded with the action.

---

[2]Apparently Han presented a bill of lading to the court at the March 9, 1977, hearing and argued that it showed that $17,000 worth of gloves was returned to plaintiff. While a bill of lading is attached to Han's brief as an exhibit, it appears not to have been placed in evidence below and thus is not a part of the record. Moreover, even if it had been introduced below, there is no evidence, e.g., sworn testimony or a declaration under penalty of perjury, authenticating the document or explaining its significance, and, apart from the document, there is simply *no evidence* in the record stating that any gloves were returned to plaintiff.

█ Han next contends that plaintiff, a corporation, is barred from preparing and filing the application for entry of judgment on a sister state judgment. Likening the application to a pleading, he argues that this follows from the rule that a corporation cannot represent itself in court, either in propria persona or through an officer or agent who is not an attorney. Plaintiff's application, made on the form approved by the Judicial Council of California, effective January 1, 1976, was signed by Leslie E. Pickett, who is designated as "Chairman," and plaintiff admits in its brief that it was unrepresented by counsel at the time of the application. Following Han's motion to vacate the judgment, a substitution of attorneys was filed and plaintiff was thereafter represented by counsel.

The above-mentioned rule stands in contradistinction to the general rule that a natural person may represent himself and present his own case to the court although he is not a licensed attorney. The reason for the distinction was explained in *Paradise* v. *Nowlin* (1948) 86 Cal.App.2d 897, at page 898 [195 P.2d 867], as follows: "A corporation is not a natural person. It is an artificial entity created by law and as such it can neither practice law nor appear or act in person. Out of court it must act in its affairs through its agents and representatives and in matters in court it can act only through licensed attorneys."

█ The Sister State and Foreign Money Judgments Act (Code Civ. Proc., §§ 1710.10-1710.65) provides a simpler and more efficient method of enforcing such judgments than the traditional action on the judgment. The registration procedure established by the act is designed to allow parties to avoid the normal trappings of an original action, e.g., the necessity for pleadings. The optional procedure was intended to offer savings in time and money to both courts and judgment creditors, yet, at the same time, remain fair to the judgment debtor by affording him the opportunity to assert any defense that he could assert under the traditional procedure. (See Recommendation Relating to Enforcement of Sister State Money Judgments (Nov. 1973) 11 Cal. Law Revision Com. Rep. (1973) pp. 457-459; *Epps* v. *Russell* (1976) 62 Cal.App.3d 201, 203 [133 Cal.Rptr. 30].) If a corporate judgment creditor is required to retain the services of counsel in order to make an application for the entry of judgment on a sister state judgment, the legislative purpose of the act would be to some extent lost for that group of creditors.

█ Entry by the clerk of a judgment based on the application is mandatory upon the filing of the application. (Code Civ. Proc., § 1710.25.) Entry of the judgment is a ministerial act of the clerk, not a

judicial act of the court. (See *id.*; 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 49, p. 3214.) Thus the application merely requests the clerk to perform a ministerial duty; it is not an "appearance" for the purpose of obtaining any ruling or order of the court going to the merits of the case. If the judgment debtor does not contest the matter, the judgment will be entered and the application will have served its purpose, all without any judicial act having been performed by the court. Of course, if the judgment debtor contests the matter by making a motion to vacate the judgment, a corporate judgment creditor properly could argue against the motion before the court only through an attorney. (See *Paradise* v. *Nowlin, supra,* 86 Cal.App.2d 897; see also *Johnson* v. *Hayes Cal Builders, Inc.* (1963) 60 Cal.2d 572, 577 [35 Cal.Rptr. 618, 387 P.2d 394].) In light of the impairment of the legislative purpose that would otherwise result, we hold that the mere filing of an application for entry of judgment on a sister state judgment pursuant to Code of Civil Procedure section 1710.15 is not such an act that a corporation can perform only through a licensed attorney. (Cf., *Prudential Ins. Co.* v. *Small Claims Court* (1946) 76 Cal.App.2d 379 [173 P.2d 38, 167 A.L.R. 820], in which the court held that in order to effectuate the statutes creating the small claims court, corporations could appear in propria persona.) Since plaintiff was represented by counsel in all proceedings following Han's motion to vacate, there was no error.

Finally Han contends that he is entitled to prove that the North Carolina court did not have jurisdiction. He argues that he was prevented from fairly contesting the issue of jurisdiction in the North Carolina court by the same extrinsic fraud that prevented him from contesting the merits of the case. Since we have already concluded that the trial court properly could have determined that there was no extrinsic fraud meriting relief from the judgment and Han has offered no other evidence to show that the North Carolina court's finding that it did have jurisdiction was incorrect, we find no error.

Han's assertion that he has been deprived of property without due process of law is without merit.

The judgment is affirmed.

Kaufman, Acting P. J., and McDaniel, J., concurred.

A petition for a rehearing was denied March 21, 1978, and the petition of appellant Han for a hearing by the Supreme Court was denied May 11, 1978.