Filed 7/16/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOSEPH C. ALTIZER et al.,<br>　　　Plaintiffs;<br>WVJP 2017-1, LP,<br>　　　Plaintiff and Appellant,<br>v.<br>ROBERT H. HIGHSMITH et al.,<br>　　　Defendants and Respondents. | A157921<br><br>(San Mateo County<br>Super. Ct. No. CIV392380) |

In 1995, 17 plaintiffs sued defendants Robert and Richard Highsmith on several promissory notes, and the parties entered into a stipulation whereby a single judgment was entered in favor of the plaintiffs in various amounts. In 2005, an attorney representing the plaintiffs renewed the judgment using the standard Judicial Council form. The attorney subsequently passed away, and when the judgment was again due to be renewed in 2015, one of the plaintiffs did so, again using the standard Judicial Council form. Defendants eventually moved to vacate the 2015 renewal, arguing that it was void because to the extent one plaintiff purported to file it on behalf of the others, doing so constituted the unauthorized practice of law. The trial court agreed and granted the motion. We reverse.

1

## BACKGROUND

On May 30, 1995, 17 plaintiffs filed a complaint against defendants in San Mateo County Superior Court. According to that complaint, eight pairs of plaintiffs and one individual held promissory notes pursuant to which defendants had promised to pay, and failed to pay, certain sums of money. The complaint asserted nine separate causes of action corresponding to the nine promissory notes, which were attached as exhibits to the complaint.

On November 29, 1995, pursuant to a stipulation among the parties and their counsel, the trial court entered a single judgment in favor of the plaintiffs for various amounts, in each case slightly less than the face amount of the nine promissory notes. The amounts owed the plaintiffs totaled $195,678.88.

In California, a judgment can be enforced for only 10 years from the date of entry. (Code Civ. Proc., § 683.020.)[1] So, on October 27, 2005, attorney David Wexler filed the two-page Judicial Council form EJ-190, "Application for and Renewal of Judgment." Wexler checked a box on the form indicating that he was the attorney for the judgment creditor. In the space for "Applicant," the form referred to an "Attachment A" listing the 17 plaintiffs and their addresses. In the space for "Judgment debtor," the form referred to an "Attachment B" listing defendants and their address. In the space for "Original judgment," the form provided the case number and date of the original judgment, and referred to an "Attachment C" listing the various counties in which the judgment had been recorded, along with the instrument number. After a box checked for "Renewal of money judgment," the form

_____

[1] Further undesignated statutory references are to the Code of Civil Procedure.

2

provided the original judgment amount of $195,678.88, interest after judgment of $200,570.67, and a fee for filing the renewal of $36.30, for a total renewed judgment amount of $396,285.85. And on the second page, Wexler signed and dated the form, providing his title as "Attorney for Judgment Creditors."

In 2008, Wexler died.

On October 9, 2015, one of the plaintiffs, John Bisordi, filed a second "Application for and Renewal of Judgment," again using the two-page Judicial Council form. He provided his name and address in the space under "Attorney or Party Without Attorney," and checked the box for "Judgment creditor." In the spaces for "Applicant," "Judgment debtor," and "Original judgment," Bisordi referred to and attached the same attachments A, B, and C from the 2005 renewal. At the bottom of the first page, Bisordi checked the box for "Renewal of money judgment," and provided the previous judgment amount of $396,285.85, added interest after judgment of $394,114.42, and the renewal filing fee of $30, for a new total renewed judgment amount of $790,430.27. On the second page, Bisordi signed and dated the form.

On October 16, Bisordi filed an "Amended Application for and Renewal of Judgment", substantively identical to that filed on October 9 except that it included on "Attachment B" a newer address for defendants.[2]

Bisordi did not serve the renewal on defendants, nor did he file any proof of service.

On October 20, 2017, Bisordi filed a declaration indicating that a further $159,380.80 in interest had accrued on the judgment from October 16, 2015 through that date, for a new total of $949,811.07.

---

[2] The information on the amended form was typewritten instead of handwritten.

3

Meanwhile, by way of several assignments in 2016, 2017, and 2018, 15 of the 17 original judgment creditors—all save Joseph and Pilar Altizer—assigned their interests in the judgment to appellant WVJP 2017-1, LP (WVJP).

On June 25, 2018, Kevin Eikenberry of WVJP filed a declaration stating that the judgment had accrued $213,085.20 in interest since October 16, 2015, for a new total of $1,003,515.40. WVJP also moved for the appointment of a receiver over several properties in Lake County owned by one of the defendants. A writ of execution issued that same day.

In December 2018, defendants filed a motion to quash the writ and stay enforcement of the renewed judgment under section 683.160. And the trial court granted the motion on the ground that defendants had not been served with notice of the 2015 renewal.

In March 2019, defendants were served by mail with notice of the 2015 renewal. And in April defendants moved pursuant to section 683.170 to vacate that renewal. They argued that to the extent Bisordi attempted to renew the judgment on behalf of the other judgment creditors, that renewal was the product of the unauthorized practice of law and was therefore void. They also argued that Bisordi's effort to renew his own portion of the judgment was void because it did not provide the separate amount necessary to satisfy his portion of the judgment under section 683.150, subdivision (c).[3]

---

[3] Section 683.150, subdivision (c) provides: "In the case of a money judgment, the entry of renewal shall show the amount of the judgment as renewed. Except as provided in subdivisions (d) and (e), this amount is the amount required to satisfy the judgment on the date of the filing of the application for renewal and includes the fee for the filing of the application for renewal."

4

And they argued that WVJP was estopped from enforcing the judgment because of the failure to serve notice of the 2015 renewal.

WVJP opposed the motion, arguing that Bisordi's renewal of the judgment did not constitute the practice of law, and in the alternative asking that the trial court reduce the amount of the renewed judgment under section 683.170, subdivision (c) to reflect only the portion of the judgment owed to Bisordi, his wife, and his late father—36.72% of the total.[4] WVJP also argued that in filing the renewal form Bisordi was acting on behalf of a joint venture comprised of the 17 judgment creditors.[5] In a declaration attached to the opposition, Bisordi explained that "[s]ince David D. Wexler had died, I signed and filed Exhibit 'D' [the 2015 renewal] for myself, as a judgment creditor, and for all other Plaintiffs."

The motion came on for hearing on May 29, in advance of which the trial court had issued a tentative ruling granting the motion. At the hearing, the trial court rejected the argument that Bisordi renewed the judgment on behalf of a joint venture or general partnership, and also declined to modify the amount of the renewed judgment pursuant to section 683.170, subdivision (c), and indicated it would adopt its tentative ruling.

On June 10, the trial court entered its written order, concluding as follows: "Defendant's Motion to Vacate Renewal of Judgment is GRANTED

[4] Section 683.170, subdivision (c) provides: "Upon the hearing of the motion, the renewal may be ordered vacated upon any ground provided in subdivision (a), and another and different renewal may be entered, including, but not limited to, the renewal of the judgment in a different amount if the decision of the court is that the judgment creditor is entitled to renewal in a different amount."

[5] WVJP also requested that the trial court take judicial notice of numerous other judgments against defendants that had been renewed and ultimately expired before any amount was paid.

5

pursuant to Code of Civ. Proc. Section 683.170. The renewal of judgment is vacated. Plaintiff John Bisordi's filing of the October 9, 2015 form EJ-190 Application for and Renewal of Judgment and October 16, 2015 Amended Application for and Renewal of Judgment constituted the unauthorized practice of law to the extent that the application was made on behalf of the seventeen [*sic*] other judgment creditors who were included on Attachment 'A' to that Application and Amended Application. *Timberline Inc. v. Jaisinghani* [(1997)] 54 [Cal.App.]4th 1361, 1367; *People v. Landlords Professional Services, Inc.* [1986)] 178 Cal.App.3d 68. The resulting judgment therefore cannot stand. *Russell v. Dopp* [(1995)] 36 Cal.App.4th 765, 775. To the extent that Plaintiff John Bisordi's Application for and Renewal of Judgment was made as to the money judgment awarded in his own name, it does not comply with the requirements of Code of Civ. Proc. section 683.140."[6]

WVJP appealed.

## DISCUSSION

WVJP argues that Bisordi's filling out and filing the renewal form was not the unauthorized practice of law, and also that Bisordi filed the renewal form on behalf of a joint venture made up of the 17 judgment creditors. We agree with the first argument, and need not reach the second.

### *The Standard of Review*

Here, where "the facts are undisputed, we review de novo whether a person's conduct amounts to practicing law without a license." (*Aulisio v. Bancroft* (2014) 230 Cal.App.4th 1516, 1523; *Hansen v. Hansen* (2003) 114 Cal.App.4th 618, 622 [issue resolved as matter of law].)

---

[6] The trial court also granted WVJP's request for judicial notice.

6

***The Enforcement of Judgments Law and the Statutory Renewal
Process***

"Before the 1982 enactment of the Enforcement of Judgments Law
(§ 680.010 et seq.), the sole method by which a judgment creditor could
extend the enforcement period of a money judgment was by obtaining a new
judgment against the judgment debtor in an independent action based on the
judgment. (See *Pratali v. Gates* (1992) 4 Cal.App.4th 632, 637–638.) In the
Enforcement of Judgments Law, the Legislature adopted an alternative
summary procedure for renewal. (*Ibid.*; § 683.050; see Tentative
Recommendation Proposing the Enforcement of Judgments Law (Oct. 1980)
15 Cal. Law Revision Com. Rep. (1980) p. 2009.) Under this procedure, a
money judgment is enforceable for 10 years from the date it is entered.
(§ 683.020.) To obtain a renewal of the judgment, the judgment creditor must
file an application for renewal with the clerk of the court that entered the
judgment before the expiration of the 10–year period of enforceability.
(§ 683.130, subd. (a); [citation].)" (*Goldman v. Simpson* (2008)
160 Cal.App.4th 255, 260 (*Goldman*).)

The applicable statutes in the Enforcement of Judgments Law include
these two:

"The application for renewal of the judgment shall be executed under
oath and shall include all of the following: (a) The title of the court where
the judgment is entered and the cause and number of the action. (b) The
date of entry of the judgment and of any renewals of the judgment and where
entered in the records of the court. (c) The name and address of the
judgment creditor and the name and last known address of the judgment
debtor. [¶] . . . [¶] (d) In the case of a money judgment, the information
necessary to compute the amount of the judgment as renewed." (§ 683.140.)

7

"Upon the filing of the application, the court clerk shall enter the renewal of the judgment in the court records."  (§ 683.150, subd. (a).)

As numerous cases have held, "[t]he statutory renewal of judgment is an automatic, ministerial act accomplished by the clerk of the court; entry of the renewal of judgment does not constitute a new or separate judgment." (*Goldman*, *supra*, 160 Cal.App.4th at p. 262; see *Jonathan Neil & Associates, Inc. v. Jones* (2006) 138 Cal.App.4th 1481, 1487 ["[E]ntry of the renewal of judgment is purely ministerial"]; *Fid. Creditor Serv. v. Browne* (2001) 89 Cal.App.4th 195, 198 ["Renewal of a judgment is a ministerial act performed by a court clerk upon receipt of an application for renewal"]; *Beneficial Fin. v. Durkee* (1988) 206 Cal.App.3d 912, 915 [same].)  The Law Revision Commission Comments for section 683.150 confirm this:  "Section 683.150 requires that the court clerk enter the renewal of the judgment based on the application.  The entry of the renewal by the court clerk is a ministerial act."  (Creditors' Remedies Legislation (Sep. 1982) 16 Cal. Law Revision Com. Rep. (1982) p. 1215.)

The judgment creditor must serve notice of the renewal on the judgment debtor.  (§ 683.160, subd. (a).)  Until proof of this service is filed, "no writ may be issued, nor may any enforcement proceedings be commenced to enforce the judgment."  (§ 683.160, subd. (b).)  However, "there is no statutory requirement that the notice of renewal be served on the judgment debtor in order for the renewal to be effective. . . .  The statute instead provides that the judgment creditor may not initiate any enforcement proceedings unless and until the judgment debtor has been served with the notice of renewal." (*Goldman*, *supra*, 160 Cal.App.4th at p. 262, fn. 4.)

Once the notice of renewal is served, the debtor has 30 days to make a motion to vacate or modify the renewal.  (§ 683.170, subd. (b)).

Section 683.170, subdivision (a), provides that "[t]he renewal of a judgment pursuant to this article may be vacated on any ground that would be a defense to an action on the judgment, including the ground that the amount of the renewed judgment as entered pursuant to this article is incorrect . . . ." "The judgment debtor bears the burden of proving, by a preponderance of the evidence, that he or she is entitled to relief under section 683.170." (*Fid. Creditor Serv. v. Browne*, *supra*, 89 Cal.App.4th at p. 199.)

### *Bisordi Was Not Engaged In the Unauthorized Practice of Law*

Defendants do not dispute that had Bisordi been the only judgment creditor, he could have renewed the judgment in propria persona. However, defendants argue that to the extent he purported to renew the judgment on behalf of the other judgment creditors, he engaged in the unauthorized practice of law. We disagree.

Business and Professions Code section 6125 provides: "No person shall practice law in California unless the person is an active licensee of the State Bar." But the code provides no definition for the term "practice law." *People v. Landlords Prof'l Servs.* (1989) 215 Cal.App.3d 1599 (*Landlords*), one of the cases cited by the trial court here, had this to say about that:

"In *Baron v. City of Los Angeles* (1970) 2 Cal.3d 535, 542, our Supreme Court noted that as early as 1922, before the passage of the State Bar Act, it had adopted a definition of 'practice of law' used in an Indiana case: ' " '[A]s the term is generally understood, the practice of law is the doing and performing services in a court of justice in any manner depending therein throughout its various stages and in conformity with the adopted rules of procedure. But in a larger sense it includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured although such matter may or may not be depending in court.' " '

9

(Quoting *People v. Merchants Protective Corp.* (1922) 189 Cal. 531, 535, quoting *Eley v. Miller* (1893) 7 Ind.App. 529; *In Re Utz* (1989) 48 Cal.3d 468, 483, fn. 11; see also 7 Am.Jur.2d, Attorneys at Law, §§ 101–117.)

"While concluding this definition a proper and sufficient one, the court in *Baron*, nonetheless, noted that 'ascertaining whether a particular activity falls within this general definition may be a formidable endeavor.' (*Baron v. City of Los Angeles*, *supra*, 2 Cal.3d at p. 543; see also *Agran v. Shapiro* (1954) 127 Cal.App.2d Supp. 807, 812.) The *Baron* Court then stated: 'In close cases, the courts have determined that the resolution of legal questions for another by advice and action is practicing law "if difficult or doubtful legal questions are involved which, to safeguard the public, reasonably demand the application of a trained legal mind." [Citations].' " (*Landlords*, *supra*, 215 Cal.App.3d at pp. 1604–1605.)

As we have observed, " '[t]he prohibition against unauthorized law practice . . . is designed to ensure that those performing legal services do so competently.' (*Birbrower*[*, Montalbano, Condon & Frank v. Superior Court* (1998)] 17 Cal.4th 119, 127; cf. *Gerhard v. Stephens* (1968) 68 Cal.2d 864, 918 ['California prohibits the unlawful practice of law . . . to afford protection against persons who are not qualified to practice the profession'].)" (*People v. Starski* (2017) 7 Cal.App.5th 215, 230 (*Starski*).)

In *Landlords* the court considered the definition of practicing law in California in a way relevant to the issue before us. There, defendant Landlords Professional Services (LPS) advertised eviction services to landlords. (*Landlords*, *supra*, 215 Cal.App.3d at p. 1601.) Clients came to LPS's offices where they were given a booklet discussing typical forms used in an unlawful detainer action and explaining how they should be completed. (*Id*. at p. 1602.) LPS's employees then conducted personal interviews with

10

clients during which they explained the unlawful detainer process, answered the clients' questions, and filled out the necessary forms and documents. (*Id.* at pp. 1602–1603.)

The Orange County District Attorney brought suit against LPS under the Unfair Competition Law (Bus. & Prof. Code, §§ 17200 & 17500), alleging that LPS was engaged in the unauthorized practice of law. (*Landlords, supra*, 215 Cal.App.3d at p. 1603.) The trial court agreed, and imposed monetary penalties as well as a permanent injunction. (*Ibid.*) The Court of Appeal affirmed. (*Landlords*, at p. 1610.) After discussing cases from several other states, the court explained: "We believe general California law and the approach taken by other states with respect to divorce services teach that such services do not amount to the practice of law as long as the service offered by LPS was merely clerical, i.e., the service did not engage in the practice of law if it made forms available for the client's use, filled the forms in at the specific direction of the client and filed and served those forms as directed by the client." (*Id.* at p. 1608.) However, LPS's advertisements "implie[d] its eviction services were not limited to clerical functions," but rather gave the impression that "the service accomplished evictions." (*Id.* at p. 1608.) And LPS's services "went further" than filling out forms, by offering "personal interviews where it was able to provide additional information and advice addressed to the specific problems and concerns of its clients," advice that "would undoubtedly be relied upon by its clients, perhaps to their serious detriment." (*Id.* at p. 1609.) Accordingly, the court concluded that LPS was engaged in the unauthorized practice of law.

Applying the above discussions and explanations leads to the conclusion that Bisordi did not engage in the unauthorized practice of law when he filled out the renewal form on behalf of himself and the other

11

creditors. Bisordi did not hold himself out as any kind of attorney, offer the other creditors any legal advice, or resolve for them any "difficult or doubtful legal questions" that might "reasonably demand the application of a trained legal mind." (*Landlords*, *supra*, 215 Cal.App.3d at p. 1605.) He merely filled out a two-page standard Judicial Council form with straightforward factual information about the original judgment and the 2005 renewal. And he evidently did so by closely following the example provided by the 2005 renewal, including by duplicating the same attachments A, B, and C, listing the judgment creditors, the judgment debtors, and the ten counties, dates, and instrument numbers where the 1995 judgment was recorded. In fact, the only difference between the 2005 and the 2015 renewal is in the amount of the judgment and the addition of interest, and the indication on the 2015 renewal that the judgment had previously been renewed.

In short, in the language of the cases, Bisordi was acting in a "clerical" capacity, or as a "scrivener." That is not the unauthorized practice of law. (See *Landlords*, *supra*, 215 Cal.App.3d at p. 1608 [defendant not engaged in practice of law to extent service offered was "merely clerical"]; *People v. Sipper* (1943) 61 Cal.App.2d Supp. 844, 846–847 ["If defendant had only been called upon to perform and had only undertaken to perform the clerical service of filling in the blanks on a particular form in accordance with information furnished him by the parties, or had merely acted as a scrivener to record the stated agreement of the parties to the transaction, he would not have been guilty of practicing law without a license"]; Tuft, Peck and Mohr, Cal. Practice Guide: Professional Responsibility (The Rutter Group 2019) ¶¶ 1:203 to 1:204.1, p. 1-125.)

Nor would deeming Bisordi's actions the unauthorized practice of law be consistent with the purpose we noted in *Starski*: protecting the public by

ensuring that those who practice law do so competently. (*Starski, supra,* 7 Cal.App.5th at p. 230.) Defendants do not identify any way in which Bisordi filled out the form incorrectly. To the contrary, the other judgment creditors were benefited by Bisordi, whose effort prevented their joint judgment against defendants from expiring and becoming unenforceable.

In seeking to avoid this conclusion, defendants argue that Bisordi practiced law when he selected the forms that he thought were appropriate for all of the creditors' goal of renewing the judgment, citing *In re Powell* (Bankr. N.D. Cal. 2001) 266 B.R. 450, 452: "A non-lawyer engages in the unauthorized practice of law when he or she determines for a party the kind of legal document necessary in order to effect the party's purpose." This rather overstates any legal judgment Bisordi brought to his task. There is only one form for renewing a judgment, the same form that attorney Wexler filed in 2005. This is the form that, in defendants' words, Bisordi "selected"—the form provided by the Judicial Council.

Defendants also argue that Bisordi engaged in the practice of law by filling out the renewal form because doing so required "analysis" of various statutory provisions regarding the amount of the judgment and interest, including section 685.010, subdivision (a), which provides that "[i]nterest accrues at the rate of 10 percent per annum on the principal amount of a money judgment remaining unsatisfied." Again, this rather overstates what was necessary to fill out the renewal form. At the bottom of the first page, Bisordi simply took the amount of the judgment from the 2005 renewal ($396,285.85), added $394,114.42 in interest and the then $30 filing fee provided by Government Code section 70626, subdivision (b)(4)[7], for a new

---

[7] The fee has since been raised to $45. (Govt. Code, § 70626, subd. (b)(4).)

13

total of $790,430.27. The concept of per annum interest is hardly legal, and calculating it is a straightforward exercise in arithmetic: multiplying the amount of the original judgment by the interest rate, dividing the result by 365, and multiplying that daily rate by the number of days since the original judgment.[8] (See Judicial Council Form MC-013-INFO, Information Sheet for Calculating Interest and Amount Owed on a Judgment, available at https://www.courts.ca.gov/documents/mc013info.pdf.) This can hardly be said to constitute legal analysis of the statutory text. And it is certainly not a calculation that might "reasonably demand the application of a trained legal mind." (*Landlords*, *supra*, 215 Cal.App.3d at p. 1605.)

Finally, defendants argue that filling out the renewal form was the practice of law by suggesting, without support, that Bisordi "did not know how to properly fill out the forms or that he had to serve them on the Highsmiths," and "[h]ad Mr. Bisordi been a licensed attorney, he would have known that he needed the express authority of all of the judgment creditors to renew the judgment." As noted, defendants do not identify any way in which Bisordi did not fill out the renewal form correctly, nor do they even assert—let alone demonstrate—that Bisordi did not have the express authority to file the form on behalf of the other judgment creditors. And while it is true that Bisordi did not serve the notice of renewal, this did not render the renewal invalid, but merely prevented enforcement of the underlying judgment until notice was properly served. (See *Goldman*, *supra*, 160 Cal.App.4th at p. 262, fn. 4.)

---

[8] In his 2017 declaration, Bisordi indicated that "[t]he per diem interest that accrues is $216.55."

14

*Tom Thumb Glove Co. v. Han* (1978) 78 Cal.App.3d 1 (*Tom Thumb*) is persuasive. There, the plaintiff corporation obtained a judgment against the defendant in North Carolina. (*Id.* at p. 3.) The corporation's chairman, who was not an attorney, then applied for entry of a California judgment based on the North Carolina judgment under the Sister State and Foreign Money Judgments Act (§§ 1710.10 et seq.), which, like the renewal procedure at issue here, provides an alternative to the traditional action on the judgment. (*Tom Thumb*, *supra*, 78 Cal.App.3d at p. 7.) In particular, the statute requires an application containing certain information regarding the sister state judgment, and "[u]pon the filing of the application, the clerk shall enter a judgment based upon the application . . . ." (§ 1710.25, subd. (a); see § 1710.15.)

Defendant moved to vacate the judgment, arguing that the application was invalid because of the rule that "a corporation cannot represent itself in court, either in propria persona or through an officer or agent who is not an attorney." (*Tom Thumb*, *supra*, 78 Cal.App.3d at p. 7.) The trial court rejected the argument, and the Court of Appeal affirmed, concluding that defendant's argument was inconsistent with the legislative purpose:

"The Sister State and Foreign Money Judgments Act (Code Civ. Proc., §§ 1710.10–1710.65) provides a simpler and more efficient method of enforcing such judgments than the traditional action on the judgment. The registration procedure established by the act is designed to allow parties to avoid the normal trappings of an original action, e.g., the necessity for pleadings. The optional procedure was intended to offer savings in time and money to both courts and judgment creditors, yet, at the same time, remain fair to the judgment debtor by affording him the opportunity to assert any defense that he could assert under the traditional procedure. (See

15

Recommendation Relating to Enforcement of Sister State Money Judgments (Nov. 1973) 11 Cal. Law Revision Com. Rep. (1973) pp. 457–459; *Epps v. Russell* (1976) 62 Cal.App.3d 201, 203.)  If a corporate judgment creditor is required to retain the services of counsel in order to make an application for the entry of judgment on a sister state judgment, the legislative purpose of the act would be to some extent lost for that group of creditors.

"Entry by the clerk of a judgment based on the application is mandatory upon the filing of the application.  (Code Civ. Proc., § 1710.25.) Entry of the judgment is a ministerial act of the clerk, not a judicial act of the court.  (See *id.*; 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 49, p. 3214.)  Thus the application merely requests the clerk to perform a ministerial duty; it is not an 'appearance' for the purpose of obtaining any ruling or order of the court going to the merits of the case.  If the judgment debtor does not contest the matter, the judgment will be entered and the application will have served its purpose, all without any judicial act having been performed by the court.  Of course, if the judgment debtor contests the matter by making a motion to vacate the judgment, a corporate judgment creditor properly could argue against the motion before the court only through an attorney.  [Citations.]  In light of the impairment of the legislative purpose that would otherwise result, we hold that the mere filing of an application for entry of judgment on a sister state judgment pursuant to Code of Civil Procedure section 1710.15 is not such an act that a corporation can perform only through a licensed attorney.  [Citation.]"  (*Tom Thumb*, *supra*, 78 Cal.App.3d at pp. 7–8.)

The reasoning of *Tom Thumb* is directly applicable here.  Like the Sister States and Foreign Money Judgments Act, the renewal statutes provide a summary procedure as an alternative to the traditional action on

16

the judgment. (See *Goldman, supra,* 160 Cal.App.4th at p. 260; *Tom Thumb, supra,* 78 Cal.App.3d at p. 7.) And both statutory schemes contain an identical requirement that the clerk "shall" enter the judgment upon receipt of the application. (Compare § 1710.25 & § 683.150, subd. (a).) Indeed, the Law Revision Commission Comments state that "Section 683.140 . . . is drawn in part from Section 1710.15 (application for entry of judgment based on sister state judgment)." (Creditors' Remedies Legislation (Sep. 1982) 16 Cal. Law Revision Com. Rep. (1982) p. 1214.) In sum, *Tom Thumb*'s conclusion that the processing of a renewal application is a "ministerial duty" that does not involve any "appearance" before the court strongly supports that Bisordi's filling out and filing the renewal application here was not the practice of law.

Defendants attempt to distinguish *Tom Thumb* on the basis it had to do with the relaxation of the rule that a corporation must always be represented by an attorney, in contrast to what they claim is the "hard and fast rule that a non-attorney individual cannot lawfully represent another person." But the five cases cited by defendants are inapplicable, as all involve non-attorneys taking actions that are clearly the practice of law, including the filing of pleadings and providing representation at trial.[9] That is not the situation here.

---

[9] The cases are: *Ziegler v. Nickel* (1998) 64 Cal.App.4th 545, 546–549 (non-lawyer trustee filed lawsuit on behalf of trust); *J.W. v. Superior Court* (1993) 17 Cal.App.4th 958, 969 (non-attorney mother prohibited from initiating an action to establish paternity and for support, custody, and visitation on behalf of her son); *City of Downey v. Johnson* (1968) 263 Cal.App.2d 775, 779–780 (non-attorney son serving as conservator and executor of mother's estate prohibited from conducting trial on behalf of estate); and *People ex rel. Dept. of Public Works v. Malone* (1965) 232 Cal.App.2d 531, 532 (non-attorney filed an answer, attended pretrial

17

Defendants' reliance on *Timberline, Inc. v. Jaisinghani* (1997) 54 Cal.App.4th 1361 (*Timberline*), the other case cited by the trial court, is unavailing. In that case, a corporation whose "corporate powers, rights and privileges" had been suspended under Revenue and Taxation Code section 23301 for failure to pay franchise taxes applied to renew a judgment in its favor. (*Timberline*, at pp. 1364–1365.) Defendant moved to vacate the renewal, arguing that a suspended corporation could not avail itself of the statutory renewal process, which motion was denied. (*Id.* at p. 1364.) The Court of Appeal reversed, holding as follows:

"The corporation seeks to avoid this result. It argues renewing a judgment does not really invoke the powers of a California court. It points out renewal of a judgment is made virtually automatic by statute. The corporation argues renewal of a judgment does not require any action by a state court because the court clerk processes the application, making it nothing more than a 'ministerial act.'

"This argument misses the mark. Renewal of a judgment requires judicial intervention for its validity, regardless how minimal the activity. For example, renewal of a judgment involves at least as much judicial intervention in the average case as does the filing of a lien to secure a judgment. [¶] . . . [¶]

"We agree with the corporation the original judgment was valid. We also agree the corporation was not pursuing a new action or seeking a new judgment, but was instead attempting to extend the life of the earlier valid

---

conference, appeared at trial and helped select jury, and agreed to settlement on behalf of his brother); and *Cevallos v. City of Los Angeles* (C.D. Cal. 1995) 914 F.Supp. 379, 385 (plaintiff acting in pro per could not amend complaint to represent a class of plaintiffs).

judgment. Nevertheless, to do so required invocation of the benefits of California laws and the assistance of the California judicial system. These rights and privileges are reserved to those corporations which pay their franchise taxes in a timely fashion and remain in good standing with the California Secretary of State and taxing authorities. As a suspended corporation, it is deprived of these benefits and was therefore not entitled to renew its judgment." (*Timberline, supra*, 54 Cal.App.4th at pp. 1367–1368, fn. omitted.)

*Timberline* simply held that renewing a judgment is a privilege that becomes unavailable to a corporation under Revenue and Taxation Code section 23301 when the corporation fails to pay franchise taxes, in part because such renewal requires "judicial intervention." (*Timberline, supra*, 54 Cal.App.4th at p. 1369.) Such was not needed here, and *Timberline* did not disagree with the ample authority demonstrating that the processing of the renewal application is a ministerial act. (See *Goldman, supra*, 160 Cal.App.4th at p. 262; *Jonathan Neil & Associates, Inc. v. Jones, supra*, 138 Cal.App.4th at p. 1487; *Fid. Creditor Serv. v. Browne, supra*, 89 Cal.App.4th at p. 198; *Beneficial Fin. v. Durkee, supra*, 206 Cal.App.3d at p. 915.)

Finally, defendants argue that accepting WVJP's position could create a "dangerous precedent," noting that non-lawyers could fill out forms to take legal actions on behalf of others whenever the processing of those forms is simply ministerial so that "large swaths of the legal profession would open up to non-lawyers," giving as examples entry of default, issuance of a writ of execution, and placing a lien on real estate owned by a judgment debtor. But we are not confronted with a layperson purporting to act for someone else when his or her own rights are not at issue, nor are we considering forms

19

other than that provided by the Judicial Council to renew a judgment.  Here, there was a single judgment entered against defendants in favor of 17 plaintiffs, and Bisordi's renewing that judgment on behalf of himself and the other plaintiffs was not the unauthorized practice of law.

## DISPOSITION

The order granting the motion to vacate the renewal is reversed, and the case is remanded for further proceedings consistent with this opinion. WVJP shall recover its costs on appeal.

_____
Richman, J.

We concur:


_____
Kline, P.J.


_____
Stewart, J.

*Altizer v. Highsmith* (A157921)

| | |
|---|---|
| Trial Court: | San Mateo County Superior Court |
| Trial Judge: | Honorable Susan Greenberg |
| Attorney for Defendants and Respondents Robert Highsmith and Richard Highsmith: | Carr McClellan P.C., Robert A. Bleicher, Christian Foote |
| Attorney for Plaintiff and Appellant WVJP 2017-1, LP: | Moskovitz Appellate Team, Myron Moskovitz; Eikenberry Law Firm, Kevin S. Eikenberry |